445 P.2d 144

David E. BEAN, Administrator of the Estate of Alice A. M. Carlos, Deceased, Plaintiff and Respondent,

v.

Archie T. CARLOS, Defendant and Appellant, Vera Emeline Hollist, Mary Alice Carlos and Glenn Green, Defendants.

No. 10899.

Supreme Court of Utah.

Sept. 12, 1968.

310

E. J. Skeen, Salt Lake City, for appellant.

K. Roger Bean, Layton, for respondent.

CALLISTER, Justice.

This is an appeal by Archie T. Carlos from an order denying his motion to vacate a judgment based on a stipulation in open court for settlement of a suit by the administrator of the estate of appellant's mother.

Alice A. M. Carlos, decedent, prior to her death owned five parcels of land, for which she executed deeds conveying her interest to each of her four children. She deposited these deeds with the Barnes Bank in Kaysville, Utah, on April 7, 1952, with instructions that they be delivered after her death. Appellant was designated as grantee in two of these deeds which were to be delivered upon his payment of a stipulated sum of money.

Mrs. Carlos died May 12, 1959. Archie paid the requisite sums and received the deeds. The bank disbursed the money according to the directions of the decedent.

The administrator of the decedent's estate filed a suit to set aside all the deeds to the four children on the ground that they were not delivered during the grantor's lifetime and were therefore void.

The trial of the case was on August 4, 1965, and testimony was taken during the morning session of the court. At the beginning of the afternoon session, the trial judge stated that he understood from a conference with counsel in chambers that the parties had agreed upon a settlement. Counsel responded in the affirmative and proceeded to state that the action may be dismissed with prejudice and the terms of the settlement for the record.

The court queried: "The parties, several of the parties are present. You all understand that to be the stipulation and the agreement for settlement?"

The attorney for the administrator asked appellant to state his agreement. Archie responded that on the part about the silo, what would he do? He was informed that he would have to move it, if it were on the property. Archie replied that he didn't go much for that.

The court queried: "But you understand it to be the agreement, even if you don't like it; is that right?"

Archie stated: "I guess."

The court stated that it would approve the stipulation entered into between the parties and observed that if they didn't have to make concessions, it wouldn't be a compromise settlement.

Subsequently, a written stipulation was submitted to Archie for his signature; he refused to sign. A motion was filed by the administrator for entry of judgment in accordance with the stipulations made in open court. The motion was noticed for hearing on November 13, 1965. On December 13, 1965, the trial court made findings of fact, conclusions of law, and rendered a judgment based on the stipulations.

On April 12, 1966, more than three months after the date of judgment, Archie filed a motion to vacate the judgment. At the hearing on the motion, Archie and his wife testified. The very essence of Archie's position was represented by his statement in response to the question if he understood when the judge queried: "But you understand it to be the agreement, even if you don't like it; is that right?" Archie: "Well, I may have understood it, but I wasn't satisfied with the deal I got, I know that."

The court denied the motion to set aside the judgment.

Appellant alleges that he did not stipulate to the entry of judgment against him, nor did he authorize his attorney to do so. This case bears a strong similarity to Johnson v. People's Finance & Thrift Co.,[1]

1. 2 Utah 2d 246, 272 P.2d 171 (1954).

where the parties through their respective counsel stipulated at the close of a pre-trial conference to the settlement of the case. The terms and conditions of the settlement were stated for the record and included an exchange of quit claim deeds between the parties. Thereafter, the parties failed to perform the terms of the stipulation. Ultimately, the court signed a judgment embodying the terms of the settlement. On appeal, the plaintiffs argued that it was never contemplated nor agreed by the parties that the stipulations would be the basis for any judgment except the judgment dismissing the case. This court stated:

> * * * We agree with the plaintiffs that obviously such was the intention of the parties and the court at that time. However, when the parties failed to perform in accordance with their stipulations, the court was not powerless to require them to abide by their agreement. It would indeed be a serious reflection upon our system of jurisprudence if parties could stipulate an agreement of settlement but refuse with impunity from performing. Courts are not impotent when one or more parties to a stipulation becomes recalcitrant. Ten months expired between the time the stipulation was entered into on May 23, 1952, and the time the judgment was entered. During this period of time the parties had failed to perform. We think the trial court took the proper course when he entered judgment embodying the terms of the stipulation.

In the instant action, appellant agreed in open court to the terms of the settlement as stated into the record on August 4, 1965. The trial court had the power to render judgment on December 13, 1965, embodying the settlement when the appellant adamantly refused to perform.

Appellant further contends that the alleged stipulation was not authorized by the probate court. He argues that the stipulation for all practical purposes settled an estate without the requisite statutory notice, petition or hearing of the matter of sales of real estate and without statutory notice, petition or hearing of the matter of distribution of the estate. Appellant concludes that the judgment is void.

Section 75–11–5, U.C.A.1953, authorizes an administrator to maintain an action for the recovery of real property of a decedent.

The judgment in this case does not constitute a sale of real estate but is the settlement of a disputed claim of the estate for the recovery of real property. The judgment in no way interferes with the administrator's duty of accounting to the probate court nor with the final distribution of the assets recovered by the administrator.

Appellant cites Section 75–11–12, U.C.A. 1953, to support his position that the administrator could not settle his action without prior approval of the probate court. The statute reads:

> Whenever a debtor of the decedent is unable to pay all his debts, the executor or administrator, with the approval of the court or judge, may compound with him and give a discharge upon receiving a fair and just dividend of his effects. A compromise may also be authorized when it appears to be just and for the best interests of the estate.

Statutes similar to the aforementioned one have been interpreted in the following manner:

> At common law, an executor or administrator had the power to settle or compromise claims for or against the estate, and the settlement or compromise could be set aside only upon proof of bad faith or fraud. This power, as a general rule, still is uniformly recognized, and extends to the compromise or settlement of even doubtful claims against the estate. [Citations omitted.] Accordingly, a representative who acts in good faith for the best interests of the estate, in compromising a claim against it, will not, in the settlement of his accounts, be denied credit for the amount so paid. * *

> In some states, including California, statutes have been enacted which restrict this common-law power by subjecting the representative's action to court approval. (Prob.Code, secs. 578, 718.5, * * *) It is generally held, however, that such statutes neither enlarge nor abrogate the common-law power of the executors and administrators to enter into a compromise or settlement, but merely afford them additional protection from liability. * * *[2]

■ In the instant action, Section 75–11–5, U.C.A.1953, specifically authorized the administrator to pursue this action to recover real property. Under the common law, which has not been abrogated by any statutory enactment, the administrator had the power to compromise or settle this action.

---

2. In Re Lucas' Estate, 23 Cal.2d 454, 144 P.2d 340, 346 (1943); See 72 A.L.R.2d 194, Anno. Claim Due Estate—Compromise, Secs. 2, 3, 4. It should be further observed that Sec. 718.5, Cal.Probate Code, cited in the Lucas case, provides that the executor or administrator, with the approval of the court, may compromise, compound or settle any claim or demand against the estate or any suit brought by or against the executor or administrator as such, by the transfer of specific assets of the estate or otherwise. The section then provides the method for filing the petition and notice for hearing. Section 578 of the Probate Code of California in regard to discharging debtors of the estate has certain similarities to Section 75–11–12, U.C.A.1953, but the California statute is more comprehensive and includes the necessity of filing a verified petition showing the advantages of the settlement or compromise.

**314**

Appellant's final point is without merit. The judgment of the trial court is affirmed. Costs to respondent.

CROCKETT, C. J., and HENRIOD, TUCKETT, and ELLETT, JJ., concur.