[No. 2654-2. Division Two. May 23, 1978.]

MAX R. SNYDER, *Respondent*, v. ALBERTINE CLAIRE TOMPKINS, ET AL, *Appellants*.

*John R. Stair,* for appellants.

*Harold E. Winther* and *Small & Winther,* for respondent.

PETRIE, J.—Defendant, Albertine Claire Tompkins, appeals from a judgment directing her to convey certain real estate to plaintiff in accordance with a compromise and settlement agreement previously presented to the trial

court. She contends that the oral stipulation between the opposing attorneys, made in open court but outside the presence of the clients, was ineffective. We disagree and affirm the judgment.

Ms. Tompkins' 13 assignments of error present four issues: (1) whether the executor could enter into a binding compromise without prior authorization of the probate court; (2) whether the settlement is void as violative of the statute of frauds; (3) whether the in–court settlement was subject to disaffirmance before consummation or reduction to judgment; and (4) whether the trial court's findings of fact are supported by substantial evidence.

The facts underlying the settlement may be summarized as follows: Carl Agnor Johnson died leaving a will which divided his estate equally among his eight children. During his life, Mr. Johnson favored each child with a gift of separate, but unequal, real estate parcels. His last two gifts, made to his son, Gerald Johnson, and his daughter, Albertine Tompkins, involved the most valuable parcels, and were allegedly completed 3 months before he died. Shortly after Carl Johnson's death, the executor of his estate, Max Snyder, commenced litigation to set aside the gifts to Gerald and Albertine.

The estate was represented by Mr. Harold E. Winther and defendants were represented by Mr. Paul J. Kleinwachter. On the third day of trial, Mr. Kleinwachter, convinced that the eventual outcome of the case would not be favorable, encouraged his clients to settle the matter. Thereafter, with all parties and their attorneys present, a settlement conference was conducted. On behalf of the estate, Mr. Snyder offered to pay defendants $4,500 to cover their out–of–pocket litigation expenses and to partially reimburse them for attorney's fees in exchange for a quitclaim deed from each defendant conveying the property in question to the estate. Concerned with attorney's fees accumulating against the estate, Mr. Snyder indicated that the offer would be reduced $500 per day until accepted. Mr. Kleinwachter discussed this offer with his clients, Gerald

Johnson and Albertine Tompkins. Subsequently, in the belief that they had accepted the offer, the following settlement was presented to the court:

THE COURT: You gentlemen arrived at a settlement of this little mystery story?

MR. WINTHER: Yes, we have, Your Honor, and we certainly hate to deprive the Court the opportunity to hear the final chapters of the tale.

We have reached a settlement, Your Honor, and Mr. Kleinwachter and I would like to make a record as to what settlement agreement we've entered into.

Mr. Kleinwachter has proposed on behalf of his clients, the defendants Albertine Clair Tompkins and Gerald Francis Johnson, to quit claim two parcels of land in controversy, and these parcels are described in paragraph four of the complaint, back to the estate of Carl Agnor Johnson in consideration that the estate pay $1,500 in costs to the defendants that they've incurred in this litigation as their out–of–pocket expenses, and also to pay to the defendants $3,000 for attorneys fees, or at least a portion of the attorneys fees that they've incurred in defense of this litigation, making the total consideration $4,500 to convey this land back to the estate. This is the whole of the settlement.

THE COURT: Is that what your clients have agreed to?

MR. KLEINWACHTER: That's what my clients have agreed to.

. . .

THE COURT: All right. There's no problem about this settlement. I mean, your clients aren't going to walk in and take some position that you've over–reached them or anything of that kind, Mr. Kleinwachter.

MR. KLEINWACHTER: No, I've taken care of that, Your Honor. This isn't exactly what they would have wanted when the case started but it's something we've talked a lot about and they've agreed to and I've talked with each of them last night. I talked again with several of them this morning and we've gone over it and I'm satisfied in my own mind that there's no problem in that regard.

Unlike his sister, Mr. Johnson promptly delivered his deed to the estate, pursuant to this agreement. Ms. Tompkins refused to abide by the settlement, claiming that it was contingent on the estate's promise (1) not to surcharge

her bequest for the litigation expenses incurred by the estate; (2) to reimburse her for real estate taxes that she had paid as registered owner of the property; and (3) to provide her with a parity parcel. Thereupon, Mr. Snyder moved for specific performance of the agreement. The trial court denied the motion, but scheduled an evidentiary hearing to determine whether Mr. Kleinwachter had the authority to settle the case.

At the conclusion of the hearing, the trial court found that the defendants had unconditionally accepted the estate's offer of settlement; and, although fully aware that her attorney was due in court to inform the court and make a record of the settlement agreement, Ms. Tompkins elected not to appear. The trial court concluded that Mr. Kleinwachter was authorized to settle the litigation and that the accord was devoid of fraud or overreaching. Accordingly, it ordered the parties to execute the agreement.

Plaintiff does not dispute the fact that he neglected to petition the probate court for approval of the compromise pursuant to RCW 11.48.130, which provides that "[t]he court shall have power to authorize the personal representative to compromise and compound any claim owing the estate." Thus, defendant asserts, because this power is bestowed upon the court, plaintiff was required to seek the court's approval of any proposed compromise. *See* J. Steincipher, *Washington Probate Practice and Procedure* 313 (1966). This particular contention does not raise a justiciable controversy, however, because Ms. Tompkins has not shown that the alleged statutory violation invades any of her legally protected interests. *Vovos v. Grant,* 87 Wn.2d 697, 555 P.2d 1343 (1976). The dual purposes of RCW 11.48.130 are to protect the assets of the estate for the benefit of the beneficiaries and to insulate the personal representative from any repercussions that may flow from the beneficiaries' dissatisfaction with a compromised claim. Ms. Tompkins' challenge is not intended to preserve the estate assets, and thus, she lacks standing to invoke the statute.

Indeed, if she succeeded in vacating the agreement the estate would be deprived of a valuable asset. Therefore, although Ms. Tompkins is an heir, as a defendant in this action she has no legally protected interest and cannot exploit her dual status.

Next, defendant contends that the settlement, which contemplates a transfer of real property is void because it was not evidenced by a signed writing. Ordinarily, a legally enforceable conveyance of real property must be executed in writing with all the formal requisites specified for a deed. RCW 64.04.010.[1] We hold the statute of frauds has no application to the present situation.

In *Deer v. Deer*, 29 Wn.2d 202, 186 P.2d 619 (1947), the court answered a similar allegation by holding that an oral agreement disposing of real property and stipulated to in open court is not void because of its failure to comport with the statute of frauds. The court explained that such stipulations were beyond the purview of the statute because

> The very purpose of the stipulation was to obviate the necessity of introducing any evidence on the subject and to invoke the court's approval of an agreement which the parties solemnly represented as having been made by and between themselves.

*Deer v. Deer, supra* at 212. We have previously indicated that the sufficiency of in-court settlement stipulations is to be governed by the terms of CR 2A.[2] *Gaskill v. Mercer Island*, 19 Wn. App. 307, 576 P.2d 1318 (1978). In the case at bench the agreement was presented in open court before a court reporter, thus solemnly memorializing that which the parties, through their counsel, represented as the agreement.

---

[1]RCW 64.04.010 and .020 provide:

"Every conveyance of real estate, . . . shall be by deed: . . ."

"Every deed shall be in writing, signed by the party bound thereby, and acknowledged by the party before some person authorized . . . to take acknowledgments of deeds."

[2]CR 2A provides:

"No agreement or consent between parties or attorneys in respect to the pro-

Defendant asserts that the in-court settlement stipulation was subject to disaffirmance before consummation or reduction to judgment. We do not agree. An attorney must exercise his best efforts to secure a favorable judgment for his client. To this end he may enter into agreements binding upon his client if the agreement is presented in open court or signed by the party against whom the same is alleged or his attorney. RCW 2.44.010.

The law favors the amicable settlement of disputes, and is inclined to view them with finality. *Wool Growers Serv. Corp. v. Simcoe Sheep Co.*, 18 Wn.2d 655, 690, 140 P.2d 512, 141 P.2d 875 (1943). An agreement arrived at in this manner is binding on the parties and will not be reviewed on appeal unless the party contesting it can show that the stipulation was a product of fraud or that the attorney overreached his authority. *Washington Asphalt Co. v. Harold Kaeser Co.*, 51 Wn.2d 89, 316 P.2d 126, 69 A.L.R.2d 752 (1957); *Cook v. Vennigerholz*, 44 Wn.2d 612, 269 P.2d 824 (1954). In *Haller v. Wallis*, 89 Wn.2d 539, 573 P.2d 1302 (1978), the court affirmed a trial court's refusal to vacate a consent judgment, ruling that once a client has designated an attorney to represent him, the court and other parties to the action are entitled to rely upon that authority until the relationship is terminated.

We subscribe to the principle that a person attempting to dislocate an in-court settlement of a claim has the burden of showing that the agreement was a product of fraud or overreaching. In the case at bench defendant does not allege that Mr. Kleinwachter fraudulently misrepresented the settlement terms to the court; indeed, Ms. Tompkins has stipulated to Mr. Kleinwachter's professional competence, and at no time has questioned the professional integrity of her former counsel. Furthermore, a trial court's

---

ceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court before a court reporter, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same."

determination that the parties fully appreciated the terms of the settlement will not be disturbed where it is supported by the evidence. *Baird v. Baird,* 6 Wn. App. 587, 494 P.2d 1387 (1972). Here, the record supports the court's finding that Ms. Tompkins was fully apprised of the settlement terms immediately before her attorney presented them in open court. Nevertheless, she voluntarily absented herself from the courtroom during the oral stipulation, indicating that she acquiesced in the settlement. *See In re Houts,* 7 Wn. App. 476, 499 P.2d 1276 (1972). Furthermore, Gerald Johnson's prompt conveyance of his parcel to the estate, pursuant to the settlement agreement, reinforces the trial court's ruling that the terms presented to the court by Mr. Kleinwachter were the same as those contemplated by the parties. Absent countervailing facts, it must be presumed that when Mr. Kleinwachter appeared in court and represented that Ms. Tompkins had agreed to the proposed settlement, he acted within the scope of his authority. *State ex rel. Eastvold v. Superior Court,* 48 Wn.2d 417, 424, 294 P.2d 418 (1956). If the rule were otherwise the judicial process would be fouled with uncertainty. *See Fite v. Lee,* 11 Wn. App. 21, 521 P.2d 964 (1974).

Although the testimony of the contesting parties is most conflicting, we find the trial court's essential findings are supported by substantial evidence. Conclusions flowing from those findings demand that the agreement be enforced.

■ The estate has filed a cross appeal seeking an award for attorney's fees. Generally, to create liability for reasonable attorney's fees there must be a wrongful act by one party toward another which exposes or involves the other in litigation with a third party who is not connected with such wrongful act, *Stolz v. McKowen,* 14 Wn. App. 808, 545 P.2d 584 (1976); or specific statutory authority or agreement of the parties. *Iverson v. Marine Bancorporation,* 86 Wn.2d 562, 546 P.2d 454 (1976). In appropriate circumstances, however, equity may allow reimbursement of attorney's fees whenever overriding considerations, such as oppressive

behavior on the part of a party, indicate the need for such a recovery. *Hsu Ying Li v. Tang,* 87 Wn.2d 796, 557 P.2d 342 (1976).

The trial court found no reason to grant attorney fees by invoking its inherent equity powers; neither do we.

Judgment affirmed.

PEARSON, C.J., and REED, J., concur.

Reconsideration denied June 27, 1978.

Review denied by Supreme Court November 17, 1978.